UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
BEATA MARIANA                           )
DE JESUS MEJIA-MEJIA,                    )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )        Civil Action. No. 18-1445 (PLF)
                                        )
U.S. IMMIGRATION AND                    )
CUSTOMS ENFORCEMENT, et al.,            )
                                        )
        Defendants.                     )
_____)

OPINION

        Plaintiff Beata Mariana De Jesus Mejia-Mejia and her seven-year-old son, D.M.,

are citizens of Guatemala who entered the United States to seek asylum on May 19, 2018.  U.S.

Customs and Border Protection agents immediately detained Ms. Mejia-Mejia and D.M.  Several

days later, officials separated D.M. and Ms. Mejia-Mejia and took D.M. to a shelter for

unaccompanied minors.  Ms. Mejia-Mejia passed her credible fear interview, an early stage in

the asylum process, and was released from detention on June 15, 2018.  On June 19, Ms. Mejia-

Mejia filed both a civil complaint [Dkt. No. 1] and a motion for a temporary restraining order

[Dkt. No. 4] seeking immediate reunification with D.M.  On June 22, 2018, the Office of

Refugee Resettlement voluntarily released D.M. to Ms. Mejia-Mejia.  Later that day, upon the

joint request of the parties, the Court dismissed the motion for a TRO as moot.  Ms. Mejia-Mejia

filed an Amended Complaint [Dkt. No. 14] on July 13, 2018, and a motion for declaratory relief

and a permanent injunction [Dkt. No. 16] on August 27, 2018.  This matter is now before the

Court on that motion and on two motions to dismiss the Amended Complaint.

The defendants sued in their official capacities filed their motion to dismiss and opposition to plaintiff's motion for declaratory relief [Dkt. No. 19] on September 14, 2018.  See also Dkt. No. 20.[1]  The two defendants sued in their individual capacities – former Attorney General Jeff Sessions and Scott Lloyd, former director of the Office of Refugee Resettlement – filed their motion to dismiss [Dkt. No. 53] on November 5, 2018.  Upon careful consideration of the briefs, the relevant legal authorities, and the entire record in this case, the Court will grant the motions to dismiss the Amended Complaint and will deny Ms. Mejia-Mejia's motion for declaratory relief.[2]

---

[1]     The agency and individual defendants sued in their official capacities include U.S. Immigration and Customs Enforcement ("ICE"); the U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); U.S. Office of Refugee Resettlement ("ORR"); the Directors of ICE, ORR, and USCIS; the Commissioner of CBP; the Attorney General; and the Secretaries of HHS and DHS.  See Amended Complaint at 1-3.

[2]     The Court considered the following documents and accompanying attachments and exhibits in resolving the pending motions:  plaintiff's emergency motion for a temporary restraining order ("TRO Motion") [Dkt. No. 4]; agency and official capacity defendants' response in opposition to the motion for a TRO ("Official Defendants' Opposition to TRO") [Dkt. No. 11]; plaintiff's Amended Complaint [Dkt. No. 14]; plaintiff's motion for declaratory judgment and permanent injunction ("Declaratory Judgment Motion") [Dkt. No. 16]; agency and official capacity defendants' motion to dismiss the amended complaint and opposition to plaintiff's motion for declaratory relief ("Official Defendants' Motion") [Dkt. Nos. 19 & 20]; plaintiff's reply in support of the motion for declaratory judgment and permanent injunction and response in opposition to motion to dismiss ("Response to Official Defendants") [Dkt. No. 36]; agency and official capacity defendants' reply in support of the motion to dismiss ("Official Defendants' Reply") [Dkt. No. 51]; individual capacity defendants' motion to dismiss the amended complaint ("Individual Defendants' Motion") [Dkt. No. 53]; plaintiff's response in opposition to individual defendants' motion to dismiss ("Response to Individual Defendants") [Dkt. No. 58]; individual capacity defendants' reply in support of the motion to dismiss ("Individual Defendants' Reply") [Dkt. No. 62]; and plaintiff's response to show cause order ("Show Cause Response") [Dkt. No. 64].

## I. BACKGROUND

Ms. Mejia-Mejia asserts nine causes of action arising from defendants' decision to forcibly separate her from D.M. during their pre-asylum detention.  Ms. Mejia-Mejia seeks the following relief: (i) a declaratory judgment that defendants' conduct violated the Administrative Procedure Act's prohibition against arbitrary and capricious final agency actions, see 5. U.S.C. § 706(2), and that the conduct violated Ms. Mejia-Mejia's right to due process and equal protection under the U.S. Constitution (Counts I, II, III, and IV), see Amended Complaint at 45-54; (ii) a permanent injunction prohibiting the defendants sued in their official capacities from separating Ms. Mejia-Mejia and her son "where there is no court finding of danger to D.M. in Ms. M.'s custody" (Count V), id. at 53, 56; (iii) compensatory and punitive damages from Mr. Sessions and Mr. Lloyd in their individual capacities for violating Ms. Mejia-Mejia's constitutional rights (Counts VI, VII, and VIII), see id. at 54-56; and (iv) attorneys' fees (Count IX), see id. at 56.

The defendants sued in their official capacities have moved to dismiss for lack of subject matter jurisdiction, arguing that Ms. Mejia-Mejia's claims are moot because the circumstances precipitating the lawsuit and the only active dispute between the parties – the separation of Ms. Mejia-Mejia and her son – no longer exist. They also argue that the Administrative Procedure Act count should be dismissed for failure to state a claim on which relief can be granted.

The defendants sued in their individual capacities have moved to dismiss the claims against them for failure to state a claim.  They argue that Ms. Mejia-Mejia's damages claims require recognition of a new implied constitutional cause of action under the Supreme Court's decision in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), and that

3

<u>Bivens</u> claims should not be expanded to this context.  They also assert absolute and qualified immunity.

## II.  LEGAL STANDARDS

### A.  *Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure*

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress.  <u>See, e.g.</u>, <u>Janko v. Gates</u>, 741 F.3d 136, 139 (D.C. Cir. 2014); <u>Abulhawa v. U.S. Dep't of the Treasury</u>, 239 F. Supp. 3d 24, 30 (D.D.C. 2017).  The plaintiffs bear the burden of establishing that the Court has jurisdiction. <u>See</u> <u>Walen v. United States</u>, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).

In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true.  <u>See</u> <u>Attias v. CareFirst, Inc</u>., 865 F.3d 620, 627 (D.C. Cir. 2017).  Although the Court must grant plaintiffs the benefit of all reasonable inferences, the Court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the court need not accept plaintiffs' legal conclusions.   <u>Disner v. United States</u>, 888 F. Supp. 2d 83, 87 (D.D.C. 2012).  Finally, in determining whether plaintiffs have met the burden of establishing jurisdiction, the Court may consider materials beyond the pleadings where appropriate.  <u>Am. Nat'l Ins. v. FDIC</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011); <u>Cumis Ins. Society Inc. v. Clark</u>, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

The doctrine of mootness – a central component of the arguments made by the defendants sued in their official capacities – is a jurisdictional inquiry.  <u>Safari Club Int'l v. Jewell</u>, 842 F.3d 1280, 1285, 1287 (D.C. Cir. 2016); <u>Mine Reclamation Corp. v. FERC</u>, 30 F.3d

1519, 1522 (D.C. Cir. 1994) ("[M]ootness goes to the jurisdiction of this court.").  Accordingly, motions to dismiss for mootness are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Han v. Lynch, 223 F. Supp. 3d. 95, 102 (D.D.C. 2016).  "The initial heavy burden of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies."  J.D. v. Azar, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (quoting Honeywell Int'l v. Nuclear Regulatory Comm'n, 628 F. 3d 568, 576 (D.C. Cir. 2010)).  Once a court determines that a claim is moot, it lacks jurisdiction to entertain the claim and must dismiss it.  Han v. Lynch, 223 F. Supp. 3d at 103.

### B.  Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), plaintiffs must plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see also Henok v. Kessler, 78 F. Supp. 3d 452, 457 (D.D.C. 2015).  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." See Bell Atl. Corp. v. Twombly, 550 U.S. at 572 (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)).  The

Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts alleged." See Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018) (alteration in original).   The Court need not, however, accept plaintiffs' legal conclusions or the inferences drawn by plaintiffs if those inferences are unsupported by the facts alleged.  See id.  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. at 678.  See also Kaempa v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits or matters subject to judicial notice.").

## III.  ANALYSIS

### A.  Plaintiff Fails to State a Claim Against the Defendants Sued in their Individual Capacities

The claims against the defendants sued in their individual capacities (Counts VI, VII, and VIII) must be dismissed in their entirety for failure to state a claim.  Count VI seeks compensatory damages from former Attorney General Jeff Sessions in his individual capacity for violating Ms. Mejia-Mejia's rights under the Equal Protection Clause.  See Amended Complaint at 54.  Count VII seeks damages from Mr. Sessions and from former ORR director Scott Lloyd, in their individual capacities, for violating Ms. Mejia-Mejia's rights under the Due Process Clause.  See id. at 54-55.  Count VIII seeks punitive damages from the same two defendants on the same grounds.  See id. at 56.  In general, the individual capacity claims rest on allegations

about the defendants' discharge of their official duties and not on any conduct with respect to

Ms. Mejia-Mejia specifically.[3]

There is no statutory basis for the money damages Ms. Mejia-Mejia seeks.  42

U.S.C. § 1983 provides a damages remedy to plaintiffs whose constitutional rights were violated

by *state* officials, but "Congress has provided no corresponding remedy for constitutional

violations by agents of the Federal Government."  See Ziglar v. Abassi, 137 S. Ct. 1843, 1848

(2017).  The Supreme Court, however, has recognized an implied cause of action to compensate

individuals whose Fourth Amendment rights were violated by a federal officer's unreasonable

search or seizure.  See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. at 395-96.

The Court analyzes Counts VI, VII, and VIII as Bivens claims because they seek

damages from two individuals for alleged violations of constitutional rights.  See Amended

Complaint at 54-56.[4]   But the Amended Complaint does not allege facts or authority sufficient

for the Court to conclude that any of these claims "is plausible on its face." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  Bivens itself recognized an implied cause of action only against

individual government officials accused of Fourth Amendment violations.  And the Supreme

Court has authorized implied causes of action for individual damages for only two other species

of constitutional violation:  a claim of gender discrimination in violation of the Fifth

---

[3]       See, e.g., Amended Complaint at 5 (surmising discriminatory intent from Mr.
Sessions' "public remarks on immigration enforcement"); id. at 16-17 (indicating that Mr.
Sessions "had the power to direct his subordinates" to carry out activities with respect to Ms.
Mejia-Mejia); id. at 17 (describing Mr. Lloyd's official duties and noting that he had the
authority to order Ms. Mejia-Mejia's son to be released); id. at 22 (Mr. Sessions "announced a
'Zero Tolerance' policy for *all* families that cross the Southwest Border").

[4]       The Amended Complaint explicitly characterizes Counts VI and VII as Bivens
claims.  Count VIII, which seeks punitive damages against the defendants sued in their
individual capacities based on the allegations in Counts VI and VIII, is not explicitly labeled as a
Bivens claim.

Amendment, see Davis v. Passman, 442 U.S. 228 (1979) (recognizing a claim by an employee against her employer, a Congressman, who had fired her); and a claim of cruel and unusual punishment in violation of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980) (recognizing a claim against the individual federal corrections officials who mistreated a prisoner).  Significantly, the Supreme Court has never extended its holdings in these two cases beyond their context.  For example, it declined to extend Davis v. Passman to discrimination suits against military officers, see Chappell v. Wallace, 462 U.S. 296, 304-05 (1983), or to extend its Eighth Amendment holding in Carlson v. Green, involving federal officials in federal prisons, to include suits against operators of private prisons, see Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 71-72 (2001); see also Minneci v. Pollard, 565 U.S. 118, 120-21 (2012). "In 30 years of Bivens jurisprudence, [the Supreme Court] has extended its holding only twice" to different contexts.  Correctional Servs. Corp. v. Malesko, 534 U.S. at 70.  Beyond the two exceptions recognized in Davis and Carlson, "expanding the Bivens remedy is now considered a disfavored judicial activity," Ziglar v. Abassi, 137 S. Ct. at 1857, and the Supreme Court "has consistently refused to extend Bivens to any new context or new category of defendants."  Id.

In determining whether to recognize a new category of Bivens claims, the Supreme Court has held that courts must determine "whether a case presents a new Bivens context," an analysis that turns on whether "the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court" itself.  See Ziglar v. Abassi, 137 S. Ct. at 1859.  If a court concludes that the claim presents a new context, "a Bivens remedy will not be available if there are special factors counseling hesitation in the absence of affirmative action by Congress" to create the new claim or liability.  Id. at 1857; see also Chappell v. Wallace, 462 U.S. at 298-99.  Although the Supreme Court has not explicitly defined these "special factors,"

the inquiry "must concentrate on whether the Judiciary" – as opposed to Congress – is "well suited . . . to consider and weigh the costs and benefits of allowing a [new] damages action to proceed." Ziglar v. Abassi, 137 S. Ct. at 1857-58. That standard is deferential to Congress: "to be a special factor counseling hesitation," a factor must "cause a court to hesitate before answering that [suitability] question in the affirmative." Id. at 1858. Such hesitation is warranted here.

In this case, the parties agree that Ms. Mejia-Mejia's claims present a "new context" that the Supreme Court has not yet recognized. See Individual Defendants' Motion at 10; Response to Individual Defendants at 11. And the Court concludes that Ms. Mejia-Mejia's claims present "special factors counseling hesitation" which preclude their recognition as new Bivens claims. Ms. Mejia-Mejia proposes that senior officials should be individually liable for broad immigration policy decisions. But there are at least three "sound reasons to think Congress might doubt the efficacy or necessity of [this] damages remedy as part of the system for enforcing the law and correcting a wrong," and under such circumstances "courts must refrain from creating [a new Bivens] remedy." Ziglar v. Abassi, 137 S. Ct. at 1858.

First, Bivens suits are not the appropriate mechanism to litigate objections to general government policies. See Correctional Servs. Corp. v. Malesko, 534 U.S. at 74 ("[W]e have never considered [the Bivens remedy] a proper vehicle for altering an entity's policy . . . ."). Rather, the implied causes of action recognized by Bivens and its limited progeny have generally been made against individuals – a police officer, a supervisor, or a federal prison guard – who have engaged in some personal misconduct in a direct and particularized interaction with a plaintiff, not against individuals who have applied a general policy that affected plaintiff and others in similar ways. There are serious separation of powers problems with using individual

capacity constitutional claims for money damages to lodge facial challenges to generally

applicable laws and policies.  See Ziglar v. Abassi, 137 S. Ct. at 1860.  Notwithstanding Ms.

Mejia-Mejia's attempts to characterize her suit as challenging the "discrete conduct" of Mr.

Lloyd and Mr. Sessions "that was in accordance with an informal policy," and her insistence that

this suit aims to deter these individual officers, see Response to Individual Defendants at 8-9,

this action is obviously a collateral challenge to a government-wide policy affecting thousands of

individuals.[5]

      The consequences of using Bivens suits to litigate this kind of objection to general

government policies could be substantial.  "[T]he decision to recognize a [Bivens] damages

remedy requires an assessment of its impact on governmental operations systemwide." Ziglar v.

Abbasi, 137 S. Ct. at 1858.  If the courts were to entertain challenges to Executive Branch

policies that are pursued through personal lawsuits against the officials of departments and

agencies of government, the discovery required to gain details on individual defendants'

motivations could dampen the candor of conversations and advice rendered by officials within

the executive branch.  Furthermore, given the thousands of asylum seekers and many others

involved in the immigration system, allowing individual capacity damages claims risks a torrent

of new litigation that could burden both the Executive Branch and the judiciary and prevent

officials "from devoting the time and effort required for the proper discharge of their duties."

Ziglar v. Abbasi, 137 S. Ct. at 1860.

---

[5]    Notably, the Amended Complaint makes no allegation that either Mr. Sessions or
Mr. Lloyd has personally directed any action at Ms. Mejia-Mejia in particular.  See supra n.3.
Cf. Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and
§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the
official's own individual actions, has violated the Constitution.").

In light of those potential consequences, courts rightly hesitate before unilaterally creating such broad new categories of liability. They recognize that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public's behalf" – in part, because Congress can tailor remedies that "[lessen] the risk of raising a tide of suits threatening legitimate initiative on the part of the Government's employees." Wilkie v. Robbins, 551 U.S. 537, 562 (2007) (citations and quotations omitted) (declining to recognize a new Bivens claim).

Second, "when alternative methods of relief are available, a Bivens remedy usually is not." Ziglar v. Abbasi, 137 S. Ct. at 1863. As the numerous cases before this Court and the two class actions before Judge Sabraw in the Southern District of California demonstrate, see Ms. L. v. U.S. Immigrations and Customs Enforcement, Case 18-cv-0428, (S.D. Cal.); M.M.M. ex rel. his minor child, J.M.A. v. Barr, Case 18-cv-1832 (S.D. Cal.), there are alternative mechanisms available to challenge the constitutionality of the kind of government action at issue here. Ms. Mejia-Mejia's claims for declaratory and injunctive relief against the relevant agencies and government officials in their official capacities offer one such example.

Finally, another factor that counsels against expanding Bivens to claims like those of Ms. Mejia-Mejia is that her suit challenges powers that are already subject to extensive Congressional action. In this case, Congress is responsible for establishing the rules of immigration and the relevant processes thereof. U.S. CONST. art. I, § 8. And Ms. Mejia-Mejia's claims rest, in part, on conduct that amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General. See 8 U.S.C. § 1325 (setting out penalties for improper entry); Amended Complaint at 22 (criticizing the government's decision to prosecute violations of Section 1325). "[O]ver no conceivable subject is the legislative power

of Congress more complete that it is over the admission of aliens." Fiallo v. Bell, 430 U.S. 787, 792 (1977). That context is important in assessing whether courts are well suited to hear new categories of Bivens claims: Congressional "failure to provide a damages remedy" like the one requested by Ms. Mejia-Mejia is "relevant and telling" in an area where Congress has otherwise been active, and it counsels against recognizing a new implied constitutional cause of action. Ziglar v. Abassi, 137 S. Ct. at 1849. See also Chappell v. Wallace, 462 U.S. at 304; Klay v. Panetta, 758 F.3d 369, 376 (D.C. Cir. 2014) ("If Congress has legislated pervasively on a particular topic but has not authorized the sort of suit that a plaintiff seeks to bring under Bivens, respect for the separation of powers demands that courts hesitate to imply a remedy.").[6]

For all these reasons, the claims against former Attorney General Jeff Sessions and former ORR Director Scott Lloyd must be dismissed for failure to state a claim.

### B. The Court Lacks Jurisdiction over Claims Against Defendants Sued in their Official Capacities

The allegations in Ms. Mejia-Mejia's Amended Complaint are troubling and raise questions of significant constitutional import. The family separation policies at issue here have "directly and substantially burdened" asylum seekers' constitutional right to family integrity. Jacinto-Castanon de Nolasco v. U.S. Immigration and Customs Enforcement, 319 F. Supp. 3d 491, 501 (D.D.C. 2018); see also M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 119-20 (D.D.C. 2018). Nevertheless, at this stage of the instant case, Ms. Mejia-Mejia's claims against the defendants sued in their official capacities have become moot. The Court therefore lacks subject matter jurisdiction to consider those claims.

---

[6]     These concerns are heightened with respect to immigration matters that also implicate national security. Doe v. Rumsfeld, 683 F.3d 390, 394 (D.C. Cir. 2012) ("The Supreme Court has never implied a Bivens remedy in a case involving the military, national security, or intelligence."); see also Klay v. Panetta, 758 F.3d at 376.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d at 576 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). "Under Article III of the United States Constitution [courts] may only adjudicate actual, ongoing controversies." Reid v. Hurwitz, 920 F.3d 828, 832 (D.C. Cir. 2019) (quotations omitted). Changing circumstances can moot a previously valid claim. "Under the mootness doctrine, [courts] cannot decide a case if '"events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Id. (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

Ms. Mejia-Mejia's claims arise from three related conditions: (i) defendants' allegedly unlawful decision to separate her from her son, (ii) the fact that the separation occurred during pre-asylum detention, under circumstances in which the government allegedly lacked justification to separate Ms. Mejia-Mejia and her son, and (iii) the "Zero Tolerance" policy under which defendants acted.[7] Each of these conditions has changed materially since Ms. Mejia-Mejia initiated this case: defendants have reunited Ms. Mejia-Mejia with her son, see Amended Complaint at 4; she has passed a credible fear interview and has been released from detention during the pendency of her asylum proceedings, id. at 11-12; and the policy under which the detention decisions were made has been changed and, to a certain extent, enjoined by a federal court. See Official Defendants' Reply at 3. In light of these changed circumstances, neither of

---

[7]     On April 6, 2018, the Attorney General of the United States announced a "zero-tolerance" immigration policy, under which all immigrant parents unlawfully crossing the United States-Mexico border with their young children would be subject to criminal prosecution and forcibly separated from their children. See Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't, 319 F. Supp. 3d at 494–95.

the two remedies Ms. Mejia-Mejia seeks from defendants sued in their official capacities would decide any question that will either "presently affect the parties' rights [or] have a more-than-speculative chance of affecting them in the future." Reid v. Hurwitz, 920 F.3d at 832 (quoting Clarke v. United States, 915 F.2d at 70).

First, Counts I through IV seek a declaratory judgment that the separate detention of Ms. Mejia-Mejia and her son violated her constitutional and statutory rights. See Amended Complaint at 45-53 (seeking a declaratory judgment under, inter alia, the Declaratory Judgment Act, 29 U.S.C. § 2201). Ms. Mejia-Mejia appears to seek a declaratory judgment that the government's prior conduct was illegal and unconstitutional. See Amended Complaint at 56; see also id. at 45-54.[8] But a declaratory judgment is a forward-looking remedy: it is a statement of "the rights and other legal relations" of the parties, see 28 U.S.C. § 2201, that is generally sought when an actual controversy exists but before it has "reached the stage at which either party may seek a coercive remedy." See Malibu Media, LLC v. Parsons, No. CV 12-1331 (BAH), 2013 WL 12324463, at *9 (D.D.C. May 31, 2013) (quoting 10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2751 (3d ed. 2013)) (dismissing defendants' declaratory judgment claims as "superfluous" and "redundant" once the plaintiff had sued the defendant and defendant had raised affirmative defenses). The "purpose of the Declaratory Judgment Act is to allow the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC, 313 F. Supp. 3d 40, 45 (D.D.C. 2018).

---

[8]     Counts I-IV generally contain allegations about the ways in which the prior separation was illegal. Count IV, seeking a declaratory judgment for violation of the equal protection rights under the Fifth Amendment, also contains the forward-looking but misplaced request that the Court "permanently enjoin [d]efendants from separating Ms. M[ejia-Mejia] from her son again." Ms. Mejia-Mejia otherwise requests an injunction in Count V.

Ms. Mejia-Mejia's request for a declaratory judgment would not advance that purpose. She has already filed a suit seeking an injunction and damages. Declaratory judgments are discretionary, appropriate when there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC, 313 F. Supp. 3d at 45. Those requirements are not met here, even if the Court were to assume that Ms. Mejia-Mejia's Amended Complaint requests a declaratory judgment concerning the legality of defendants' future conduct. Ms. Mejia-Mejia is living in the United States and now has custody of D.M., with whom she has been reunited. The Amended Complaint does not plead facts showing that the parties have any immediate adverse legal interests; there are no facts showing that any of Ms. Mejia-Mejia's future prospects would be affected by a declaratory judgment that defendants' *prior* conduct, or resumption of that conduct, is illegal. Cf. J.D. v. Azar, 925 F.3d at 1307 (finding that a particular claim of a class representative "became moot in late December 2017, when she left ORR custody and was no longer subject to [the] ORR[] policies" challenged in her lawsuit).

Second, Ms. Mejia-Mejia also seeks an order that defendants are "permanently enjoined from separating Ms. M. from her son D.M. where there is no court finding of danger to D.M. in Ms. M.'s custody." Amended Complaint at 56; see also id. at 53. But granting such an injunction would not affect the rights of the litigants in the case before this Court. See Reid v. Hurwitz, 920 F.3d at 832. Ms. Mejia-Mejia asks the Court to forbid defendants from doing something they already have ceased to do – and that they are now functionally forbidden from doing by a nationwide preliminary injunction in the class action suit in which the defendants' family separation policies are being litigated. See Ms. L. v. U.S. Immigrations and Customs

Enforcement, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. 2018); see also infra at 18-19.  And she

pleads no facts that establish that the specific injury – as it applies to her – is likely to reoccur.

Under these circumstances, and on the facts currently before it, the Court must conclude that a

permanent injunction would have no "practical effect" on any live dispute between the parties –

so the claim is moot.  See Doe v. Rumsfeld, 172 Fed App'x 327, 328 (D.C. Cir. 2006).

Plaintiffs' response to the Court's Show Cause Order appears to acknowledge as much.  See

Show Cause Response at 3 (recognizing that "it is possible that the [d]efendants' voluntary

cessation mooted [p]laintiff's injunctive relief claims").

Perhaps recognizing the weakness of her claims under the circumstances

presented here, Ms. Mejia-Mejia argues that she is entitled to the benefit of an exception to the

rule that courts lack subject matter jurisdiction over moot disputes: the voluntary cessation

exception.[9]  The Supreme Court has held that where voluntary cessation of a challenged practice

causes a case to become moot, federal courts may still determine the legality of the practice in

certain circumstances.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S.

167, 189 (2000). [10]  Courts will only dismiss the claim "if subsequent events made it absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Id.  And

---

[9]    On June 25, 2019, the Court issued a show cause order requiring Ms. Mejia-Mejia to demonstrate why her claims should not be dismissed as moot.  See Dkt. No. 63.  Ms. Mejia-Mejia's response contained no argument that the claims against the defendants sued in their official capacities are not, in fact, moot – only the argument that the voluntary cessation exception to mootness should apply.   See Show Cause Response at 3-4.

[10]    Plaintiffs concede that a separate exception, for mooted disputes that are "capable of repetition yet evading review," see United States v. Weston, 194 F.3d 145, 148 (D.C. Cir. 1999), does not apply to this case.  See Response to Official Defendants at 11.  The voluntary cessation exception is "much narrower" than the exception for action capable of repletion, yet evading review.  See Clarke v. United States, 915 F.2d at 703.

"the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id.

The voluntary cessation exception, however, cannot preserve Ms. Mejia-Mejia's claims in this case. "For the [voluntary cessation] exception to apply, the [defendants'] voluntary cessation must have arisen *because of* the litigation." Sze v. Immigration and Nationality Service, 153 F.3d 1005, 1008 (9th Cir. 1998) (emphasis in original). See also Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d 1, 13 (D.D.C. 2019) ("The voluntary-cessation exception to the mootness doctrine . . . does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation."). Ms. Mejia-Mejia believes that the timing of the government's release of D.M., coupled with its initial opposition to her motion for a TRO, "clearly demonstrates that Defendants voluntarily ceased their challenged conduct in response to this litigation." Response to Official Defendants at 8. The Court does not agree with this characterization. It takes note of government counsel's signed representation that defendants released D.M. not because of this litigation, but upon the request of plaintiff and in accordance with the government's obligations under the Trafficking Victims Protection Reauthorization Act. See Official Defendants' Reply at 2. This is a credible claim, consistent with the rest of the record in this case. See Official Defendants Opposition to TRO at 1 (a TRO ordering D.M.'s release is not needed because "the process is already underway to release D.M. to the custody of Plaintiff"); id. at 3 ("Since Plaintiff has made contact with ORR, ORR has already begun the process" of completing its obligations under the Trafficking Victims' Protection Act, and the government aimed to release D.M. "as quickly and as safely" as the Office's procedural safeguards allowed.).

Furthermore, even if the Court were to assume that Ms. Mejia-Mejia's lawsuit was indeed the cause of her reunification with D.M., the voluntary cessation exception to mootness would not bar dismissal because the Court finds that it is "absolutely clear that the challenged conduct cannot *reasonably* be expected to start up again." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 189 (emphasis added).  First, the "challenged conduct" is the specific conduct from which Ms. Mejia-Mejia's injuries arise: the separation of Ms. Mejia-Mejia and D.M., pursuant to the challenged Zero Tolerance policy, that occurred when Ms. Mejia-Mejia was seeking admission to the United States and was not otherwise disqualified from retaining custody.  See Amended Complaint at 22-23.  The relevant inquiry is whether *that* injury is likely to reoccur.  Ms. Mejia-Mejia has now gained admission to the United States, has passed her credible fear interview, and is awaiting adjudication of her asylum claim.  The hypothetical separation she now fears is that, at some point in the future, the government will do three things: deny her petition for asylum, take her into custody, *and* separate her from her son during removal proceedings.  See id. at 9, 40, 53.  On the facts currently before the Court, this possibility is conjecture, supported primarily by allusions to the government's treatments of immigrants generally.  See id. at 40; see also id. at 52-53.[11]  And the hypothetical post-denial separation Ms. Mejia-Mejia describes is a different category of injury with causes and consequences that are distinct in legally relevant ways from the claims that precipitated this lawsuit – especially if, for example, her son's separate asylum petition is successful.

---

[11]     Ms. Mejia-Mejia notes that she "is in significant risk of losing her asylum claim" because of a ruling making it harder to claim asylum on the basis of domestic abuse, Amended Complaint at 53, but provides no reason to believe that the government will separate Ms. Mejia-Mejia from her son.

Finally, changes to law and policy since Ms. Mejia-Mejia's separation from her son give the Court further assurance that "the challenged conduct cannot reasonably be expected to start up again." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 189. A month after the defendants separated Ms. Mejia-Mejia and D.M., President Trump issued an Executive Order rescinding and clarifying several aspects of the Zero Tolerance policy that served as the basis for Ms. Mejia-Mejia's initial separation. The Executive Order states the government's policy of housing parents and children together, subject to certain limitations that do not appear in this case. See Executive Order 13841, Affording Congress an Opportunity to Address Family Separation § 1, 88 Fed. Reg. 29435 (June 20, 2018). See also State of West Va. v. Environmental Protection Agency, Case 15-1363, Dkt. No. 1806952 (D.C. Cir. Sept. 17, 2019) (dismissing as moot a challenge to an executive branch policy after a subsequent executive order rescinded the plan). Most importantly, Judge Dana Sabraw, who is supervising class action litigation of the family separation practices at issue in this case, has issued a class-wide preliminary injunction. The injunction prohibits a wide variety of government defendants – including every one of the defendants in this case – from "detaining class members in DHS custody without and apart from their minor children, absent a determination that the parent is unfit or presents a danger to the child," unless the parent declines reunification. See Ms. L. v. U.S. Immigrations and Customs Enforcement, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. 2018). Ms. Mejia-Mejia is now a member of the nationwide class that is protected by Judge Sabraw's Order, the practical effect of which will be to prohibit defendants from separating Ms. Mejia-Mejia and D.M. in the manner described in the Amended Complaint.[12]

---

[12]     Judge Sabraw certified the Ms. L. class on June 26, 2018. At the time of the certification, the class definition included parents who have a minor child who "is or will be separated from them" by DHS. Ms. L. v. U.S. Immigrations and Customs Enforcement, 310 F.

For purposes of the voluntary cessation exception to mootness, the government's changed policy and Judge Sabraw's preliminary injunction offer reasonable assurance that the government will not resume the challenged conduct with respect to Ms. Mejia-Mejia. Doing so now would risk defiance of a federal court order and complicating the government's obligations in the Ms. L. litigation. And courts have given "governmental entities and officials . . . considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Citizens for Responsibility and Ethics in Wash. v. Wheeler, 352 F. Supp. 3d at 14.[13] Furthermore, as described supra at 18, it is very unlikely that the government could resume the particular separation that Ms. Mejia-Mejia challenges because she has passed her credible fear interview and is unlikely to reenter the pre-asylum detention that precipitated the separation from her son.

---

Supp. 3d at 1139 n. 5. Ms. Mejia-Mejia was reunited with her son on June 22, several days before class certification, raising the possibility that she might not be a member of the Ms. L. class. On March 8, 2019, however, Judge Sabraw modified the class definition to include parents, like Ms. Mejia-Mejia, who were reunited with their children before the date of the class certification. The class now includes all those who "entered the United States at or between designated ports of entry on or after July 1, 2017, who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who has been, is or will be separated from them by DHS and has been, is or will be detained." Ms. L. v. U.S. Immigrations and Customs Enforcement, 330 F.R.D. 284, 292 (S.D. Cal. 2019). Although Judge Sabraw stayed application of the injunction to the new class members pending further briefing, id. at 293, plaintiffs have filed a motion to enforce the injunction with regard to all members, and Judge Sabraw continues to supervise a plan for how the expanded members of the class should be identified and incorporated into the injunction. See Case 18-cv-0428, Dkt. No. 405, 2019 WL 1868487 at *1 (S.D. Cal. April 25, 2019). On the facts before the Court, the Ms. L. class definition clearly includes Ms. Mejia-Mejia.

[13]     The other requirement of proving the voluntary cessation exception is no more helpful to plaintiff. No "concrete effect, traceable to the injury, and curable by the relief demanded, clearly remain[s]" after D.M.'s release, for the reasons described supra at 13-16. See Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d at 14.

In short, the voluntary cessation doctrine does not apply, and Ms. Mejia-Mejia's claims against the defendants sued in their official capacities are moot.  Accordingly, the Court will dismiss Counts I, II, III, IV, and V for lack of subject matter jurisdiction.  Because the Court is also dismissing Counts VI, VII, and VIII against the defendants sued in their individual capacities, Ms. Mejia-Mejia has not prevailed on any of her substantive claims and is not entitled to attorneys' fees.  See 28 U.S.C. § 2412.  Count IX, therefore, will also be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss the Amended Complaint [Dkt. Nos. 19, 20] filed by the defendants sued in their official capacities; the Court will grant the motion to dismiss the Amended Complaint [Dkt. No. 53] filed by the defendants sued in their individual capacities; and the Court will deny Ms. Mejia-Mejia's motion for declaratory relief and permanent injunction [Dkt. No. 16].  A separate order consistent with this opinion will issue this same day.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 26, 2019